Page 5, 2343 Benjamin v. Commissioner of Social Security Good morning. Thank you very much for expediting this case. Charles Benjamin, the plaintiff, is still alive, and this case is about a closed period in the past when we were claiming disability. He is currently receiving benefits. In December, this Court decided Nunez v. Commissioner of Binding Decision, and in that case, this Court held an ALJ must explain how much time a claimant would be off task or miss work if there is no evidence that the person could work on an uninterrupted basis and had moderate limitations in concentration, persisting, or maintaining pace. And this appeal is on all fours with Nunez. And I made these arguments before Nunez came down, but now this is the law of the Second Circuit. The ALJ's own consultative, non-examining doctors, Dr. Fernandez and Schurer, both opined that Charles Benjamin could work but would have some distractedness, lapses in motivation, and focus due to his psychiatric symptoms, and that's on the record at page 96 and 109. And based on the evidence, the ALJ himself determined that Charles Benjamin had moderate limitations in concentrating, persisting, and maintaining pace. But the ALJ then, he gave a question to the vocational expert, if a person is off task, I think, 20 percent of the time and missed two or three days, could they work? And the VEs said no. In Nunez, the ALJ did include only goal-oriented work, not production-oriented work. Here, the ALJ put no limits on being off task or missing time. Now, the VE in Nunez said if a person is off task 10 percent of the time and misses one day a month of work, the person could not do any work. Well, the state agency consultants concluded that Mr. Benjamin could work a normal work day and work week. Yes. So why would there need to be any allowance for time? Because there was no evidence that he could, because even his own experts said he would be off task, that he would be distracted, have lapses in motivation and focus. And with moderate limitations and focus and concentration and persisting in work, that would mean you would be off task sometime. We don't know whether it's 5 percent or 15 or 20 and 25, but that's what the — in Nunez, that is the standard, that if there's evidence the person had limitations in these areas, that the ALJ would have to address that. And Dr. Simcoe, the treating physician, who doesn't get any special deference but certainly has to be looked at, said his patient would be off task 25 percent of the time and miss four days due to physical and mental impairments. So I think under — before we get to the other issues of evaluation, under Nunez, you should remand for the judge to look at off task time and what it would be. Now — Counsel, I have a question about the scope of the claim here. Sure. It's my understanding, based on reading the red brief footnote 9, that Mr. Benjamin was found to be disabled as of September 11, 2024. So the claim we're dealing with here is the denial on November 1, 2021, to September 10, 2024. Is that the theory we're dealing with? I just wanted to understand the theory. Thank you. Yeah. And Dr. Hartman, who was the examining psychologist for the commissioner and for the ALJ, examined Charles Benjamin twice and had an extensive interview. We have his notes. He talked to him. He noted he was agitated and was — slouched and had bad eye contact and failed the Serial 7 test. And he found the second time that Charles Benjamin would have marked difficulty sustaining an ordinary routine and marked difficulty retaining his emotions. And this is the exam that the commissioners, non-examining doctors, relied on. And so they came to a different conclusion. But his reports were consistent with each other. They're consistent with the reports of Dr. Simcoe and other people that he had anxiety, that he left an exam, that he thought he was dying from cancer and that exacerbated his mental illness. And even the ALJ found that Dr. Hartman was partially persuasive. He lost 100 pounds over in less than a year period. He thought he was dying from cancer. But the ALJ relied really only upon the non-examining consultants who had then foundationally relied upon Hartman and Figueroa. And the ALJ's own consultant, Dr. Perotti, found that Dr. Hartman's opinions are somewhat with — consistent with and supported by the evidence at page 104. So under Dr. Hartman's well-supported and consistent evidence — and this is — he works for the commissioner. He's been doing this for over 20 years and is usually relied upon. So it's unusual for the ALJ to disregard his own examining consultant for his non-examining. So under — Charles Benjamin, under Hartman, is disabled under the listings, and you should disremand for payment. And also the ALJ erred by giving no credit, no persuasiveness to the treating physician who said that Charles Benjamin had life-threatening and dangerous conditions limiting him from working. He said that it's unsafe for Charles to do any work. And Dr. Shearer, another one of the commissioner, found that Dr. Simcoe's opinions were somewhat consistent with and supported by the evidence at record 103. And another agency doctor, Dr. Sharif Najavi, found he could only work four hours — stand or walk four hours a day, which would eliminate light work. My client had dangerously high, very dangerously emergency-high blood pressure, and there were times he didn't take the medication. He thought he was dying of cancer during this period, and the judge never asked him why he wasn't taking the medications. But in any event, even when he was taking his medications, his blood pressure was very high, and his condition developed into stage 4, end-stage kidney disease shortly after this decision. He has well-documented acute headaches and eye pain. He has well-documented lumbar radiculopathy, which causes pain that was shown by the straight raise by the ALJ's own consulting doctor, and that was not included in the residual functional capacity. There is no evidence that Charles Benjamin could walk and stand at least six hours a day on the record. And finally, the ALJ erred by not crediting Mr. Benjamin. And Dr. Sharif Najavi, at page 91, said his — Charles Benjamin's statements about the intensity, persistence, and functionally limiting effects of the symptoms are substantiated by objective medical evidence alone. Again, that's at page 91. So his testimony was well-supported, and it was very consistent with the rest of the medical evidence. The ALJ discredited him for not taking his medicine and for saying he had cancer. And he testified that he's had mental therapy in the past. He was treated by his primary care for his anxiety and depression, which is very typical and does not affect his credibility. His mental health affected his taking of medication or not. Even when he was compliant with medication, his blood pressure was dangerously high, and nobody felt he was not an accurate reporter of his limitations. Looking at the evidence from both sides and looking at all the inferences, no rational person could conclude that Charles Benjamin was able to work on a full-time, sustained basis during this closed period. Thank you. May it please the Court. Natasha Olgin for the Commissioner of Social Security. The Court should affirm the ALJ's decision because substantial evidence supports the ALJ's finding that as to the period at issue, which is from November 21 through September 10, 2024, Mr. Benjamin was not disabled because he could do a range of light, simple, low-contact work. And substantial evidence still supports that finding, even if you focus only on the final year of that Mentally, the ALJ reasonably found that Mr. Benjamin could do simple work with occasional interaction with others and occasional changes in routine. This is directly supported by Dr. Fernandez and Dr. Sherer's findings. They said that Mr. Benjamin could sustain a normal workday and workweek given similar limitations. And for that reason, this case is distinguishable from the Nunez case that Mr. Benjamin is focusing on. The Court in Nunez did not hold that the ALJ errs by not including any time off task in the RFC, just because the issue has been raised. The holding was much narrower. The issue in that case was that the ALJ erred by not including any attendance limitations in the RFC because every opinion in the record said that the claimant had limitations in that area. And moreover, there was also evidence from the treatment notes suggesting that this was an issue. The claimant was having panic attacks regularly and this was affecting his ability to take the subway and even to get to his appointments and to otherwise carry out daily functions. And moreover, there was an internal inconsistency in that case because even the least restrictive opinion said that the claimant had moderate limitations in maintaining a schedule specifically, not just in maintaining concentration, persistence, and pace. And the ALJ found the opinion that the claimant had moderate limitations in maintaining a schedule persuasive but then didn't elaborate or include any specific related limitations in the RFC. We don't have that problem here because the opinions were not so consistent on that point. Again, Dr. Fernandez and Dr. Sher said that despite having moderate limitations in certain areas, which did not include maintaining a schedule, they said his limitations pertain more to working around others without being distracted by them. And they said that he should limit his interactions with co-workers in the public because of this, the ALJ agreed, but they went on to find that he could sustain a normal work day and work week despite these limitations and the ALJ agreed. The ALJ included similar if not even more restrictive limitations in the RFC and it was reasonable for the ALJ to rely on these experts over Dr. Hartman's opinions. Dr. Fernandez and Dr. Sher considered Dr. Hartman's opinions and his examination findings, but they also considered the normal mental status findings from other providers consistently. That includes from Dr. Simcoe and from various specialists. They also considered his activities and the ALJ then explained that he agreed with Dr. Fernandez and Dr. Sher's assessment of certain fairly strict limitations precisely because of Dr. Hartman's findings. But then he also explained why he wasn't as persuaded by Dr. Hartman's more restrictive opinions. They weren't consistent with the record as a whole, including the lack of specialized treatment, including the normal observations from other providers, and including Mr. Benjamin's activities, which included carrying out various household activities, interacting with friends, and at least at some points of the period, it is true he was working. So ultimately, this was a reasonable resolution of conflicting evidence. The ALJ also reasonably resolved the evidence as to Mr. Benjamin's physical impairments. He reasonably found Dr. Simcoe's opinion less persuasive in particular. That includes the opinion as to time off task and as to working being dangerous. Dr. Simcoe said specifically that the stress of the physical and mental stress of work could exacerbate Mr. Benjamin's blood pressure, but the ALJ accounted for this by limiting Mr. Benjamin to light exertion and to limited contact with others, limited changes in the workplace. All of this reasonably accounts for both physical and mental stress. So for all these reasons, the ALJ reasonably accounted for all of Mr. Benjamin's impairments in the RFC, found that he could do light, simple work, which is less restrictive than any of the work that he had done in the past, including in 2023. And for these reasons, the court should affirm the ALJ's decision. The court should also deny the latest 7-6 motion because Mr. Benjamin hasn't shown that the new evidence is material to the period under review, which, again, ended on September 10th, 2024. So unless the court has any further questions, I will rest on my brief. Thank you. Thank you, counsel. We'll hear about that. Thank you. Again, I want to emphasize that the consultative examiners upon which the ALJ relied both said that Charles Benjamin could do sustained work with, quote, some distractedness, lapses in motivation, and focus due to his psychiatric symptoms. And the judge himself found there'd be moderate limitations in concentrating, persisting, and maintaining pace that is directly on all fours with Nunez. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.